JAMES GORDON, appellant, *vs.* WILLIAM CROOKS, appellee.

*Appeal from Morgan.*

Where it is apparent that the jury either mistook the evidence, or that they misunderstood the law as applicable to the evidence, a new trial will be granted.

This was an action of debt, brought in the Morgan county Circuit Court, by Crooks against Gordon. The declaration avers, that Gordon, the defendant, at Lynnville, to wit, at the county aforesaid, on the 30th day of June, 1842, made to the plaintiff, and one Alexander Renton, who has since, to wit, on or about the 22d January, 1845, departed this life, his, the said defendant's, promise and undertaking in writing, in the words and figures following, to wit:

"Rec'd, Lynnville, June 30th, 1842, of William Crooks and Alex. Renton, debts for collection, amounting to the sum of two hundred dollars, which I promise duly and faithfully to collect, and to pay as soon as collected, and to give up all the uncollected debts whenever called for by the aforesaid William Crooks and Alex. Renton, or pay the sum of two hundred dollars.

"JAMES GORDON."

Which promise and undertaking is in the possession of the defendant, or has been destroyed by him; and the plaintiff avers that defendant has collected the sum of seventy-five dollars, "which the plaintiff, through the agency of one of his attorneys, David A. Smith, demanded special payment of" on, &c.; "and that the defendant should give up the remainder of said debts

uncollected," which defendant refused to do, whereby an action accrued, &c., to the damage of plaintiff, of two hundred dollars.

To this declaration defendant pleaded several pleas. By the first plea he says he received said claims of the said Renton and Crooks, as a justice of the peace, for collection, to return, &c., and to pay over, &c., averring that Renton never did, in his lifetime, nor has Crooks, by any person having authority, demanded the money collected, or the claims uncollected, before the commencement of the suit; concluding with a verification. The second was a plea of *non est factum*, verified by defendant. The third plea avers the payment by him to Renton and Crooks, of all the money collected. The fourth plea was a plea of set-off. The fifth plea avers that the plaintiff, and one Turner, were partners in trade, at Lynnville, &c., under the name and firm of Turner & Crooks, and that defendant had loaned to said Turner, for the use of Turner & Crooks, one hundred dollars, or thereabouts, and that Turner & Crooks were indebted to him for the rent of a room, in which they did their business, and that acting by their agent, Renton, and by themselves, for the purpose of paying their indebtedness to him, they placed these claims in his hands for collection; that these claims were due to Turner & Crooks, and not to Renton; admits that he collected a part of the claims, and avers that Turner, Crooks and Renton collected a part of these claims; that many of the claims were against insolvent debtors; and that after he had collected all that could be collected out of said claims, he accounted with Crooks and Turner and Renton, as their agent, and settled with them; and by consent of all parties, the amount collected by Gordon was applied to the payment of the amount due from Turner & Crooks to him, &c. The sixth plea avers that the claims received by defendant for collection, were the property of and due to Crooks and Turner, and that Renton had not any interest in them; that defendant had accounted with Crooks and Turner for the amount collected, and offered to return the claims uncollected, &c., and that all the claims had been accounted for, to and settled with Turner, &c. The seventh was a plea of *nil debet.*

Upon all these pleas issue was joined, and a trial by jury, and judgment by Woodson, Judge, for $43 30, at Nov. term, 1848.

A motion for a new trial was denied. The defendant then prayed his appeal, and filed his bill of exceptions, containing the evidence. The opinion of the Court contains so much of the evidence as is necessary to a full understanding of the question of law decided.

M. McConnel, for appellant:

That instruction on the plea of *non est factum,* was wrong, inasmuch as that plea changes the issue, and imposes upon plaintiff a burthen which would not otherwise belong to him. That the instruction in relation to the contract, stating that it could not be explained, &c., was wrong. It cut off the issues raised on the fourth and fifth pleas. That instruction in relation to the testimony of Turner was wrong; his testimony not being attacked or impeached. The motion for a new trial ought to have been allowed, as this case comes strictly within the rule laid down in the case of Dawson *vs.* Robbins, 5 Gilman, 72. No authority is shown in any person to institute the suit, or to make the demand of defendant upon the instrument in writing. The defendant was not bound to recognise the demand; it did not come from any person authorized to make it. If the authority was sufficient for some purposes, it did not authorize the collection of money due to Crooks and Turner, or to Crooks and Renton, but to Crooks alone. The authority, such as it was, was improperly before the jury, it not having been read in evidence. Whitney *vs.* Whitman, 5 Mass., 404; Taylor *vs.* Sorsby, Walker's Miss. Reps., 97.

D. A. Smith, for appellee:

Courts will not lightly disturb the verdicts of juries, particularly where there has been contradictory evidence. 5 Gilman, 569.

Opinion by Mr. Justice Caton:

We are satisfied, after a very careful examination of the testimony in this case, that the jury either mistook the evidence, or that they misunderstood the law, as applicable to the evidence.

We think the jury were warranted in believing, that the receipt upon which the suit was brought, in terms, was given to Crooks and Renton. Mrs. Renton had inspected it recently, and

taken a copy of it, which she produced in Court, while Turner, who says it was given to Turner & Crooks, had never seen it since it was originally given, and could not pretend to speak of its contents except in general terms. Although, as Turner says, it may have been given for accounts due to Turner & Crooks, yet there are some circumstances rendering it probable that it may have been given in the form as stated by Mrs. Renton. Turner says that he was about to leave the state, and the receipt was to be left with Renton, who was doing business for Crooks, and who, it is probable, was expected to settle with Gordon, for the accounts mentioned in the receipt. It may have been thought convenient, therefore, to insert the name of Renton in the receipt, instead of the name of Turner.

Besides Turner, there are four witnesses, who swear that Turner & Crooks had been carrying on business in partnership, and that Renton, in his life-time, admitted that Turner & Crooks were indebted to Gordon for money loaned, and that these accounts were placed in his hands, to provide for the payment of the lent money. This is substantially the same account that Turner himself gives of the transaction. There are two other witnesses, who testified that the accounts for which the receipt was given, were in the hand-writing of Turner, one of the members of the firm of Turner & Crooks.

There is no pretence that there was more than one receipt given by Gordon; and although that expressed on its face to be given to Crooks and Renton, we think it established, beyond controversy, that it was, in fact, given for accounts due to Turner & Crooks, and to provide for the payment of a debt due from the firm to Gordon; and we see no reason to doubt the statement made by Turner, that he subsequently settled with Gordon; which settlement was approved by Crooks. That Turner, as one of the members of the firm to whom the accounts belonged, was authorized to make such settlement, and discharge the defendant, cannot be doubted, and as this does not appear to have been explained to the jury, it is probable that they supposed, as the receipt was given to Crooks and Renton, Turner, although interested in the subject matter, had no right further to interfere with it. The mistake was a natural one, and, we think, explains a verdict which would otherwise appear unaccountable. We are of opinion that a new trial should have been granted. Sev-

eral other errors are assigned, but we do not think it necessary to investigate them.

The judgment of the Circuit Court is reversed, with costs, and the cause remanded.　　　　　*Judgment reversed.*