SCHOOL INSPECTORS OF THE CITY OF PEORIA, Appellants, v. ANN HUGHES, Appellee.

APPEAL FROM PEORIA.

When a verdict is manifestly against the evidence, it will be reversed.

THIS was an action brought by appellee against appellants, for services in cleaning and taking care of a school-house in the city of Peoria.

Declaration contained common counts. Plea, general issue, and notice of set-off.

On the trial, plaintiff proved that she had performed the labor, and its value.

The evidence for defendants was as follows:

*John Hamlin* said, before these premises came into possession of the present board, they belonged to the Peoria Female Academy Association, of the directors of which, witness was president. The sale and transfer was made April 17th, 1856. While the premises belonged to the female academy, school was kept in second and third stories, which were heated by a furnace in basement. Other part of basement, where school is now kept, was used for play-room. When weather became cold, a stove was put in to warm it. The premises continued to be used in this way after present board obtained them, till basement was seated, and school put in it. These school premises occupy parts of lots 2, 4 and 6, in block 23, in Peoria. They are $85\frac{1}{2}$ feet one way, by 171 the other. There is a small house, consisting of two rooms and a kitchen, on that part of lot 6 owned by the board. There is a large cistern on premises near school-house. In the fall of 1855, about 1st of September, I, on behalf of the female academy, engaged plaintiff to take charge of these school premises, as janitor, keep up fires, and keep premises in order for schools. Plaintiff was to move into dwelling-house, have use of it and appurtenances, have water from the cistern, and schooling of one child free of charge, in full for her services in taking charge of premises as above. Under this arrangement she went into the house, took charge of premises, kept up fires, swept and dusted them daily, and I think washed them occasionally, and had her rent and schooling of her children free. Before plaintiff went into house, it was moved back from lot 2, and repaired. The association talked of putting a new roof on back of it, and something may have been said to plaintiff about it. I think we offered to make some repairs of this kind after she went in. These arrangements

continued until the premises were sold to the present board. I only know she continued to live in house till quite recently, and take charge of school premises till end of summer term in 1857; that she was not charged by board for schooling her children till after that time; she then began to pay customary entrance fee of one dollar each, at commencement of term. I know this from being treasurer of board—giving out the tickets, and receiving the money for tuition.

*Henry B. Hopkins* said, I was superintendent of schools under said board from some time in winter of 1855, till about September, 1856. In spring of 1856, shortly after board came into possession of third ward school premises, I called on plaintiff, by direction of the board, to see about continuing her in charge of said premises. She was then living in a house on the premises. I knew on what terms the female academy had employed her, and I told her the board wanted her to continue on same terms. Without anything further being said, she continued in charge, as before, as long as I was superintendent.

I cannot recollect whether the compensation she was receiving, or to receive, was mentioned, and will not be positive that terms of contract with former board were named, but my best impression is, they were. A contract as existing with the former board, was referred to, and the new engagement was made in reference to it. When I found her at this time, she was at work in the school-room, I think washing floors, but will not be certain whether washing or sweeping it. Mr. Hovey began acting as superintendent when I quit.

Verdict for plaintiff; damages, $208.

Motion for new trial: 1st, Because verdict is against law and evidence; 2nd, Verdict should have been for defendant. Motion overruled.

Judgment for plaintiff. Defendant excepted.

J. K. COOPER, for Appellants.

C. C. BONNEY, for Appellee.

CATON, C. J. Consulting our private feelings and sympathies, we should, no doubt, be gratified to affirm this judgment. But the proof is positive, uncontradicted, and unsuspicious, that the plaintiff made a contract to do the work for the new board on the same terms as she had done the same work for the old board, and that for the extra work which she should do for the new board, and which she had not done for the old, she should be entitled to a reasonable compensation. Had the jury been governed by this agreement, they would never have rendered the

verdict which they did. Of this, no question has or can be made. The verdict should have been set aside, and a new trial granted.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*