## Katie Haecker, by her Next Friend, v. Chicago & Alton R. R. Co.

1. PRACTICE—*When a Verdict Should Be Directed for the Defendant.* —When the testimony in a case on trial before a court and jury is such that it would be the duty of the court, if a verdict should be returned in favor of the plaintiff, to set the same aside for want of sufficient evidence to support it, it is the duty of the trial court, upon motion, to instruct the jury to return a verdict for the defendant.

2. PROXIMATE CAUSE—*Of an Injury, What Is.*—Where a young girl, seven years of age, accompanied by two other little girls and followed by her mother, crossed a railroad track in front of a moving train in safety, and then turned back and re-crossed the track and was injured in consequence, *it was held*, that the act of turning back and re-crossing the track was the proximate cause of her injury.

3. EVIDENCE—*Of Negative and Affirmative Matters.*—Where the evidence in an action for a personal injury shows that a bell on an engine was operated by steam, the fact that witnesses state they did

not hear it or notice that it was ringing, is of little value as against the positive statement of other witnesses that it was ringing, in connection with the undisputed fact that it was operated by steam automatically.

Trespass on a Case, for personal injuries.   Error to the Superior Court of Cook County.   Heard in the Branch Appellate Court at the March term, 1900.   Affirmed.   Opinion filed November 8, 1900,

Statement.—This is an action on the case for personal injuries sustained by Katie Haecker, a minor, against the Chicago & Alton Railroad Company, brought by the father of Katie, as next friend.

Katie Haecker, December 20, 1892, had her arm cut off by a locomotive of the Chicago & Alton Railroad Company, at the crossing of that railroad and Halsted street, in Chicago.   Halsted street has been a public highway for twenty years and more.   It ran north and south.   It was about eighty feet wide, and there was a sidewalk on both sides. Looking south on the east side of the street from the bridge crossing the south branch of the Chicago river, there was a coal shed, built even with the edge of the sidewalk, eighteen or twenty feet high, and extending along the sidewalk one hundred and twenty-five feet and up to the beginning of a series of railroad tracks belonging to the Chicago & Alton Railroad Company, the Illinois Central Railroad Company, and the Santa Fe Railroad Company.   The tracks ran in an easterly and westerly direction, crossing Halsted street. The first two tracks south of the coal shed belonged to the defendant in error, and are freight tracks.   One hundred and five feet south are three other tracks belonging to defendant in error.   Twenty-six feet south of those are two tracks of the Illinois Central, and south of those are two tracks of the Santa Fe Railroad Company.   On each side of this series of tracks, that is, both on the south side and on the north side, there were gates, consisting of two arms, which operated up and down, and when down or closed, the arms extended across the street and across the sidewalk on each side of the street.   These gates were operated by a man in a tower.

December 20, 1892, Mrs. Haecker, the mother of the plaintiff in error, with a baby in her arms, and with plaintiff in error, who was about seven years old, and two children by the name of Cohn, were returning home about five o'clock in the evening. It was dark when they reached the crossing; they walked south on the east side of Halsted street from the Halsted street bridge and along the coal shed. On arriving at the tracks they found the gates up. There was a crowd of people in front of them, also going across.

Said gates were erected in 1891. In June or July, 1892, said bridge was broken, and from that time to the time Katie was injured the gates were not operated, it being the theory that, as no teams could cross said bridge, it was unnecessary to operate said gates; but two flagmen were on duty at that crossing to protect the public from accident.

Katie and the two Cohn girls, followed by Katie's mother, crossed the two Alton freight tracks and the one hundred and five feet space south of those tracks. Two trains were approaching from the east, one on the north track of the Illinois Central and one on the south track of the defendant in error. These trains were running nearly abreast of each other.

There is no question by any one as to the facts above narrated. Any additional facts necessary to an understanding of this case will be found in the following opinion.

HIRAM BLAISDELL and P. L. O'MEARA, attorneys for plaintiff in error.

T. J. SCOFIELD, attorney for defendant in error.

MR. JUSTICE HORTON delivered the opinion of the court.

After all the testimony had been introduced, the trial court, at the instance of the attorney for defendant in error, directed the jury to return a verdict of not guilty.

We understand the rule in this case to be, that when the testimony in a case on trial before a court and jury is such

that it would be the duty of the court, if a verdict should be returned in favor of the plaintiff, to set the same aside for want of sufficient evidence to support it, that then it is the duty of the trial court upon motion to that effect duly made, to instruct the jury to return a verdict of not guilty.

The evidence in this case is overwhelming to the effect that the unfortunate little girl had crossed safely over the tracks of defendant in error to the space between such tracks and the tracks of the Illinois Central railroad. Also that she turned to go back across the track of defendant in error, where she was injured. Why she attempted to return can not be positively determined. It may be that she became confused and started to return to her mother, who had not yet crossed the track in question. But whatever the reason may be which induced Katie to turn back, it seems to us certain that her doing so was the immediate and proximate cause of her injury. If it be conceded, as contended by counsel for plaintiff in error, that it was negligence on the part of defendant in error to have suspended the operation of the gates referred to in the above statement, while the river bridge was broken and in use for pedestrians only, still it must be conceded that the failure to operate such gates was not the proximate cause of the injury complained of.

The contention that the bell upon the engine was not rung is not supported by the evidence. That bell was operated or rung by steam. The fact that witnesses state that they did not hear it, or notice that it was ringing, is of little value as against the positive statement of other witnesses that it was ringing, in connection with the undisputed fact that it was operated by steam, or as it might almost be said, it operated automatically.

The further contention that the engine of defendant in error was running at a high rate of speed—a rate prohibited by ordinance of said city—is untenable. The testimony is overwhelming to the contrary.

The testimony is so conclusive that if the case had been submitted to the jury, and the jury had found, either that

the bell was not ringing, or that the engine was running at a rate of speed prohibited by ordinance, it would have been the duty of the trial court to set aside such finding.

There were a large number of persons passing over this crossing at the time plaintiff in error was injured. Neither of the two little girls, or of the other persons, who were with plaintiff in error, was injured. Nor is there any testimony to the effect that any of them narrowly escaped injury or was in any imminent danger.

There does not seem from this record to be any reasonable doubt that the plaintiff in error, after safely crossing the track in front of said engine, turned to go back across the track and that her doing so caused the injury.

It is not thought to be necessary to discuss the question, presented by counsel for defendant in error in this court as well as in the court below, as to whether there is a fatal variance between the allegation in the declaration and the evidence, because the judgment of the trial court must be affirmed for the reasons above indicated.

The judgment of the Superior Court is affirmed.