## Illinois Central R. R. Co. v. Katie Haecker, by Her Guardian.

1. APPELLATE COURT PRACTICE — *Has Power to Reverse Verdicts Where Manifestly Against the Evidence.* — It is the right and duty of the Appellate Court to reverse the judgments of trial courts and the verdicts of juries, where, upon consideration of the testimony, they find that such judgments or verdicts are clearly against the weight of the evidence.

2. DAMAGES — *Caused by Intervention of Plaintiff's Own Act.* — When a person is placed in a position of peril by the negligence of another, and is injured in an attempt to escape the threatened danger, there may be a recovery for injuries so sustained, although they would not, in fact, have occurred but for the plaintiff's own acts.

3. PERSONAL INJURIES — *Caused by Fright* — *Where There Can Be No Recovery.* — Plaintiff, a child, being frightened by the approach of a train operated with due care by the defendant company, ran upon the track of another company and was there injured by a train of such other company. *Held,* that the defendant company was not liable.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded. Opinion filed October 15, 1903.

Halsted street in the city of Chicago runs north and south. It is eighty feet wide. There are walks for foot passengers upon each side. It is carried over the south branch of the Chicago river by means of a bridge. About 125 feet south of this bridge the street is crossed by two freight

tracks of the Chicago & Alton Railroad Company. One hundred and twenty-five feet further south it is crossed by three main tracks of the same company. South of these last named tracks, at a distance of from twenty to twenty-six feet, the street is crossed by two tracks of the defendant company. Still further south lie two tracks which belong to the Santa Fe Railroad. All these tracks lie at right angles to the street. North of this system of tracks, as well as to the south thereof, are gates, by means of which the street can be closed when trains are passing over it. In the spring or summer of 1892 this bridge was broken. Thereupon it was partially turned so as to prevent the crossing of teams, and yet leave a passage for persons on foot. After this time and up to the date of the accident, the gates were not used.

At five o'clock P. M. of December 20, 1892, appellee, then a child of a little more than seven years, accompanied by her mother and the two Cohn children, came from the north across the bridge and passed south along the east sidewalk. The three little folk walked together ahead of appellee's mother. When the party reached the main track of the Chicago & Alton, trains were coming from the east. The mother stopped north of these tracks, while the children crossed into the space between those tracks and the tracks of appellant. The evidence of appellee tends to show that the train of appellant came first to the crossing and that the Alton train followed, the one being a little more than the length of the train behind the other. The evidence of appellant tends to prove that the Alton train was first at the crossing, and that of appellant followed. With the coming of these trains it seems that appellee became frightened and turned back from the Illinois Central track, going north and west from the east walk over to or near the west walk, where she fell down, with her right fore arm across the south rail of the Alton track. At that moment the engine of the Alton train passed the point where the child fell, cutting off her hand.

To recover damages for this injury appellee brought suit

against the Alton Company. The last trial of this action resulted in a peremptory instruction to the jury to find for the defendant, and on appeal the judgment of the trial court was affirmed. 91 Ill. App. 570.

The declaration in this cause contains five counts:

First. That appellant failed to operate gates or bells, and failed to maintain a flagman at this crossing, and carelessly ran its trains over this crossing at a high and dangerous rate of speed at the same time when another train was being run rapidly upon the Alton tracks, etc. Second. That appellant carelessly constructed this crossing and ran its train over it, etc. Third. That appellant having gates at this crossing, neglected to keep such gates closed while its train was passing over this crossing, etc. Fourth. Appellee, after pleading an ordinance of the city of Chicago, limiting the speed of trains at this point to twenty miles per hour, alleged that the train of appellant passed this crossing at a greater rate of speed, etc. Fifth. Appellee, after pleading an ordinance of said city requiring appellant to keep a watchman at this crossing, alleged that while such a watchman was there stationed, he did not signal or warn appellee of the approach of this train, etc.

The plea was the general issue.

On the trial appellant made a motion at the close of appellee's case, and a like motion at the close of all the evidence, to instruct the jury to find a verdict for appellant. Each of these motions was overruled.

The trial resulted in a verdict for appellee in the sum of $15,000, from which judgment this appeal was perfected.

W. A. HOWETT, attorney for appellant; J. G. DRENNAN, of counsel.

P. L. O'MEARA and HIRAM BLAISDELL, attorneys for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Counsel for appellee state:

"We think it will be conceded under the decisions, that if there is any evidence fairly tending to prove

plaintiff's case, with all the legitimate conclusions that may be drawn from such evidence, that the determination of the jury thereon is absolute, and if there appears to be no substantial error in the instructions or admission of testimony, that this court must affirm the judgment rendered below."

If this be the law, much of the labor of this court in the past was useless, and we wasted much valuable time to the injury of parties and their counsel. It is clear, under the statute and the decisions based thereon, that the Supreme Court in most cases has no longer control of the facts. Hence, unless this court has jurisdiction over and the right to examine into the competent evidence presented to the jury, that constituent part of the court has become a law unto itself.

The rule is otherwise. This court is not bound by the judgment of the trial court nor by the verdict of the jury. It is true that all questions of fact are for the jury, but at common law the trial judge had a supervisory power over their verdict. By Section 61 of the Practice Act that power was given to courts of review. When this court was established the exercise of this power by the Supreme Court was limited, (Sections 88 and 90, Practice Act), but the power of this court in that regard was not interfered with; so that "It is the right and duty of the appellate courts, under the law as it exists in this state, to reverse the judgments of trial courts and the verdicts of juries, where, upon consideration of the testimony, they find that such judgments or verdicts are clearly against the weight of the evidence." ( C. & A. R. R. Co. v. Heinrich, 157 Ill. 388, 394.) And "A performance of this duty is absolutely essential for the preservation of the rights of citizens and property owners in all those classes of cases where the judgments of the appellate courts are final and conclusive upon all questions of fact." C. & E. R. R. Co. v. Meech, 163 Ill. 305, 308.

The Supreme Court when it reviewed questions of fact, often reversed the judgment of the trial court because the verdict was manifestly against the weight of the evidence. Scott v. Blumb, 2 Gilm. 595, and the seven other cases cited

in foot note; Gordon v. Crooks, 11 Ill. 142; School Inspectors v. Hughes, 24 Ill. 231; Orne v. Cook, 31 Ill. 238; Corey v. McDaniel, 42 Ill. 512; O. & M. R. R. Co. v. Schiebe, 44 Ill. 460; Columbus, etc., v. Troesch, 57 Ill. 155; C. & A. R. R. Co. v. Purvines, 58 Ill. 38. Eleven other similar cases lie before me. It is unnecessary to cite them. The cases named establish the practice.

Since the creation of the Appellate Court, to which the reviewing of questions of fact is committed, this court has frequently reversed verdicts for the reason that they were clearly and manifestly against the weight of the evidence. From the many cases which announce this doctrine we cite: C. & E. I. R. R. Co. v. Gill, 37 Ill. App. 61; Doremus v. Clarke, 51 Ill. App. 435; Wheaton v. Johnson, 55 Ill. App. 53; Robison v. Harrington, 61 Ill. App. 566; Elguth v. Grueszka, 75 Ill. App. 281.

" This court has not set aside too many judgments where the verdict has been against the preponderance of the evidence, and the Supreme Court has too repeatedly held it to be its duty so to do, to longer question either its policy or its duty in that regard." Jefferson Ice Co. v. Zwicokoski, 78 Ill. App, 646.

Counsel for appellant argues that no liability exists for negligent acts which occasion fright or terror, where the acts of negligence are not of such a character as might reasonably be expected to have the effect produced; and they support the argument by many authorities, notably that of Braun v. Craven, 175 Ill. 401. The cases holding that mere fright and physical injury resulting therefrom are not actionable, are not here in point. Appellee was not injured by mere fright; but it is claimed, being frightened, by reason of that fright she ran into a place of danger and was there hurt. The legal contention of appellee is that when a person is placed in a position of peril by the negligence of another, and is injured in an attempt to escape the threatened danger, there may be a recovery for injuries so sustained, although they would not in fact have occurred but for the plaintiff's own acts. 8 Am. & Eng. Ency. 578, (2d Ed.). This is the law of the case at bar.

It therefore becomes our duty to ascertain what negligence, if any, within the limits of the declaration, appellant was guilty of in this case.

The gates of this crossing were erected and operated by the Alton Company. It is true that the witness Sheehan, one of the watchmen at this crossing, testified: "At the time of the accident I was paid by the Alton Railroad, and there was a kind of joint arrangement between them as to gates and flagmen;" but what that joint arrangement was, or what it included or excluded, or whether it related to the operation of the gates, or covered some collateral matter only, is not shown; while the evidence is uncontradicted and positive that these gates "were constructed by the Alton people and were operated by the Alton people." Nor was the failure to close these gates the proximate cause of the injury of which appellee complains.

The allegation that appellant failed to keep a watchman at this crossing, or that, being there, he did not signal or warn appellee of the approach of these trains, is not sustained by the evidence. An examination of the record shows that as these trains drew near this crossing watchmen Sheehan and Murphy were there, and that each was in the active performance of his duty to warn the passers-by of the approaching danger; that the former told the mother a train was coming, and directed her to stand by the flag shanty; while the latter, by voice and by lantern, warned appellee to stay back in a place of safety.

The charge that either of these trains was running at a high and dangerous rate of speed is not supported by the evidence. Not only is the verbal evidence overwhelmingly against such contention, but the fact that both trains came to a stop before or just as they had cleared the crossing, shows that their speed was necessarily much less than that prohibited by the ordinance, and that the rate of speed of each was neither high nor dangerous.

It is not denied but that each locomotive was equipped with a burning headlight. Some of appellant's witnesses

state that these headlights on that night could be seen by one on either of these tracks, or by one standing between them, when the engines were yet from 500 to 600 feet east of this crossing.

The usual conflict upon the question as to whether or not the bell upon the engine of appellant was ringing is found in this case. Witnesses called by appellee swear that they did not hear a bell, but most of them admit that they paid no attention to that particular, while appellant's engineer and the watchman Sheehan, testify that the bell was ringing as the train approached the crossing. The bell upon the Alton engine was an automatic steam bell. Four witnesses swear that it was ringing as that engine came to and passed over the street. The conditions were such at the time and place of the accident that the ringing of the bell on either engine gave warning of the fact that a train was or that trains were about to pass over the street.

The injury to the Cohn children by the train of appellant, if any they suffered, has no place in this record. The accident to them is not *res gestae*. They were not hurt by the train which injured appellee. The admission of testimony in that regard tended to prejudice the jury against the defendant.

The conclusion we have reached in this case renders unnecessary the further discussion of the points raised by appellant.

Appellee was not injured by the train of appellant. The most that can be urged is that she was frightened by the approach, or by the passing of that train, and ran to the north and west until she fell in front of the Alton train and there received her injury.

But one of these trains was under the control of appellant. They were running in the same direction on parallel tracks, which, at this crossing, were separated by a space of from twenty to twenty-five feet. The view was practically unobstructed. Each train was approaching the scene of the accident in the usual manner; the headlights were burning, the bells were ringing, two watchmen stood on the

crossing caring for the safety of the passers-by as best they might. In this task they were assisted by a city policeman.

What duty did appellant owe to appellee which it did not perform? We find none. Being unable to discover in this record any neglect by appellant upon which this judgment can be based, the cause is reversed and remanded.