Illinois Central Railroad Company v. Katie Hecker.

Gen. No. 4,574.

1. APPELLATE COURT—*what will not consider on review.* The Appellate Court on review will only consider the record before it and will not consider records made in other jurisdictions or statements of counsel with respect to facts or supposed facts.

2. APPELLATE COURT—*when not bound by opinion of Appellate Court of another district.* The Appellate Court of one district is not bound by the decision of an Appellate Court of another district rendered with respect to the same subject-matter but not in the same case.

3. APPELLATE COURT—*right to review evidence.* It is not only within the power of the Appellate Court but it is their duty to review verdicts upon the facts.

Action in case for personal injuries. Appeal from the Circuit Court of DuPage county; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the October term, 1905. Reversed, with finding of fact. Opinion filed November 9, 1906.

D. B. SHERWOOD, for appellant; J. M. DICKINSON. of counsel.

KNIGHT & BROWN, HIRAM BLAISDELL, and CHARLES H. WAYNE, for appellee; OLIVER R. BARRETT, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Halsted street, in the city of Chicago, runs north and south and crosses the Chicago river by a bridge. Just south of the bridge are switch tracks of the Chicago & Alton Railroad, then an intervening space, then two passenger tracks of the Chicago & Alton road, then an intervening space, variously estimated by witnesses at from twenty to thirty feet, and which one witness testified he saw measured and that it was nearly twenty-seven feet; then two passenger tracks of the Illinois Central Railroad Company, and still further south, tracks of the Atchison, Topeka & Santa

Fe Railway Company, each of these tracks crossing
Halsted street nearly at right angles. North and
south of this net-work of tracks were gates which had
been operated from a tower, attached to which tower
was also a tower bell, for the purpose of giving warn-
ing of approaching trains. Some six months before
December, 1892, the bridge over the river had become
disabled, and had been turned so that teams could
not cross it, and from that time on until the date of
the accident here in question the gates had not been
used, and at least a part of that time the tower bell
had not been used. Instead of the gates and tower
bell two flagmen and a policeman had been placed
upon this crossing for the protection of the public;
one flagman apparently in the employ of the Alton
road, one in the employ of the Central, and the police-
man stationed there by the city. On the evening of
December 20, 1892, at about sixteen to eighteen min-
utes after five o'clock, and after dark, Mrs. Hecker
was passing south over said tracks upon the east side-
walk of Halsted street. carrying a child in her arms,
and having ahead of her her daughter, Katie Hecker,
then about seven years and one month old, and two
children of another family, one much older than Katie.
Mrs. Hecker testified that she stopped north of the
Alton tracks. Two other witnesses testified positively
that she passed over the Alton tracks. But whether
she stopped north or south of the Alton tracks, she
discovered passenger trains approaching from the
east on both the Alton and Central tracks, and she
stopped in a place of safety. These trains were in
fact upon the south Alton track and the north Cen-
tral track, respectively. Katie and the other children
had passed over the Alton tracks, and they were be-
tween the Alton and the Central tracks. Katie be-
came frightened and ran west across the street, and
about ten or twelve feet beyond the west line of the
street, when she fell, and either a forward truck

wheel of the Alton engine or a drive wheel thereof passed over her wrist and cut off her hand; and later at the hospital it was found necessary to amputate her arm a little above the elbow.   On December 28, 1904, and after her arrival at her majority she brought this suit against the Illinois Central Railroad Company in the Circuit Court of DuPage county to recover damages for said injury.   Plaintiff filed a declaration containing nine counts.   She afterwards dismissed as to the second, eighth and ninth counts, and the court directed a verdict for defendant as to the third count. The first count charged that the tracks of the Alton road and of defendant were in close proximity and nearly parallel to each other at Halsted street, and that the trains of the Alton were in full view of the servants of the Central while operating its trains there; that many pedestrians traveled across the railroad tracks on Halsted street, especially between five and six o'clock P. M.; that the Central Company negligently drove its passenger train westerly across Halsted street when it knew that a train of the Alton was due to cross or was crossing Halsted street  in close proximity to its tracks, and when a large concourse of people were passing along the sidewalks of Halsted street at the intersection of said street and said railroad tracks; that plaintiff, a child of tender years, was lawfully walking along Halsted street, and was about to step upon the tracks of the Central Company, in the exercise of due care for one of her years, when the defendant negligently drove its train westerly upon Halsted street at a time when the train of the Alton Company was being driven over said crossing or was about to be so driven; that plaintiff was thereby frightened and placed in a position of great danger, and while trying to escape therefrom, and to escape the danger to which she had been subjected by the negligence of the defendant, her arm was run over by the Alton train.   The fourth count charged that while

plaintiff was endeavoring to cross the intersection of defendant's road and Halsted street with due care, defendant so negligently drove and operated its train that plaintiff became frightened and confused and was placed in a position of great danger, and while endeavoring to escape therefrom her arm was run over and cut off by the Alton train. The fifth count contained a like charge of negligence and a like result. The sixth count charged that defendant so negligently managed its train that plaintiff became frightened and confused and placed in great danger, and to obviate and lessen the danger ran from defendant's track to and upon the Alton track and her arm was run over and cut off by the Alton train. The seventh count charged like negligent operation of defendant's train and that by the motion and action of said train plaintiff was thrown back and turned from defendant's track to and towards the Alton track, and thereby became frightened and confused and placed in great danger, and to obviate and lessen such danger she unavoidably stumbled, slipped and fell, and her arm was unavoidably thrown across the track of the Alton Company, and was cut off by its train. Defendant pleaded the general issue and the Statute of Limitations. To the latter plea a replication was filed and issue joined thereon, but it is not now contended that the action was barred by limitation. Upon a trial there was a verdict and a judgment for the plaintiff, and the railroad company appeals.

From various questions and answers in the examination and cross-examination of the witnesses, and from certain record proof offered by defendant, to which the court sustained an objection made by plaintiff, and from remarks by counsel in the printed and oral arguments, it appears that there has been prior litigation between plaintiff and the Alton Company, and also between plaintiff and defendant, in the courts of Cook county, concerning plaintiff's injury. It is

said that plaintiff sued both companies, dismissed the Central Company, had a verdict against the Alton Company, which was set aside, and then had another verdict against the Alton Company, which was also set aside; that at a third trial of that case the court directed a verdict for the Alton Company, which was affirmed in Haecker v. C. & A. R. R. Co., 91 Ill. App. 570; and she then sued the Central Company and had a verdict and a judgment, which was reversed and the cause remanded in I. C. R. R. Co. v. Haecker, 110 Ill. App. 102, and that she afterwards dismissed that suit and brought this one. Both sides seem to seek a benefit here from these supposed facts. If the former proceedings were as contended, there was no judgment in bar in favor of the Central Company, and it did not file any plea of a former adjudication; and while the course plaintiff pursued was unusual, it was within her legal rights. The only questions we can determine must arise from the record of the Circuit Court of Du Page county. For that reason we refused defendant leave to file here a record of the Appellate Court of the First District in the case above mentioned wherein it was appellant, including a transcript of the record then before that court. We cannot consider proofs outside the record of the Circuit Court of DuPage county, nor statements by counsel as to what occurred in another tribunal. If a bar against plaintiff had been raised by any such proceeding, no doubt it would have been specially pleaded in the trial court. Plaintiff on the other hand seems to suggest that the number of verdicts plaintiff has recovered furnishes a reason why we ought not to disturb this verdict upon the facts. Plaintiff abandoned any advantage of that kind when she dismissed her suit against the Central Company in Cook county. If we were to take into consideration the verdict in her favor against the Central Company in Cook county, we would also be bound by the decision against her by the Appellate Court

of the First District in that case. If this were the same suit and had been tried in Cook county and afterwards transferred to DuPage county, we would be bound by the legal principles laid down in 110 Ill. App. 102, where it was held that the Illinois Central Railroad Company had not been guilty of negligence toward appellee, so far as the record then before it disclosed; but this is a new case, and we consider it our duty to pass upon the record now before us without regard to the prior litigation.

An ordinance of the city of Chicago then in force limited the speed of passenger trains to ten miles an hour, but provided that where, within a certain district, which included the place here in question, gates had been erected and put in operation, they might be run at a speed not exceeding twenty miles per hour. Plaintiff claims that the Illinois Central train reached Halsted street first; that because the gates were not in use it was limited to a speed of not exceeding ten miles per hour, and that it exceeded that speed; that its speed was so great as to raise a current of air which whirled plaintiff around and greatly frightened her and caused her to run from the Central tracks towards the Alton tracks and to fall; that by the negligence of defendant she was put in reasonable apprehension of physical injury, and in an effort to avoid it, through the impulse of fear, she incurred and suffered this physical injury from another danger, and that the negligence of the Central Company was therefore the proximate cause thereof. Plaintiff also under the general charge of negligent operation contends that defendant was negligent in failing to blow a whistle or ring a bell as its train approached Halsted street, in the failure of the flagman at the crossing to discharge his duties, in the failure to operate the tower gates and ring the bell, in the running of the train at a rate of speed which was a menace to the safety of those rightfully on the crossing, and in so operating its train

as to approach a crowded thoroughfare at an undue rate of speed  at such a time and in such a manner as to reach it nearly abreast of the Alton train on a parallel track in close proximity

At the time plaintiff became frightened and started to run she was on the sidewalk on the east side of the street.   Some witnesses put the width of the street there at eighty feet and others at one hundred feet. According to the testimony which appears to be most exact, her hand was found, where cut off, twelve feet west of the west side of the street.   After plaintiff became frightened she therefore ran from ninety to one hundred and ten feet, when she fell beside the Alton track and her hand went over the nearest rail.   Plaintiff claims that the Central train came first, and that the wind produced thereby turned her around and frightened her and caused her to run.   The proposition that the speed of the train was swift enough to produce a current of wind which turned her around, finds no reasonable support in the evidence.   Without repeating any of the proof on that subject, we think it sufficient to say that it is manifest to us from the evidence that plaintiff was not turned around by the current of air produced by the speed of defendant's train. She got away from her mother and became frightened and ran.   If the two trains reached the street together, her fright may have been the result of the approach of both trains on tracks so near together at the same time, while she stood between those tracks.   If defendant's train came first, then that frightened her. If the Alton train came first, then it caused her fright. One witness for plaintiff and one for defendant testified that the two trains came together.   Plaintiff and one of her witnesses testify definitely that the Central train came first; another witness testified that the Alton was six feet behind the Central; and plaintiff's mother testified that she saw the Alton first, and that they came pretty near the same time.   Nine witnesses

testified for defendant that the Alton train came first; one said it was 350 feet ahead, another 100 feet, another one or two car lengths, while others testified that the Central engine was near the rear of the Alton train, which train the proofs showed was about 240 feet long. Several witnesses testified that the Alton train had come to a stop before the Central train entered the east side of Halsted street. One witness testified that he was riding on the rear of the Alton train; that when it began to slow down as it approached Halsted street he got off and went north to look at some freight cars stored there, and that as he was so riding on the rear end of the Alton train, and when he so got off as it was approaching Halsted street, defendant's train was some distance behind and both trains appeared to be going at about the same speed. He came to the scene of the accident a few minutes later. The proof showed that the engineers of both trains had general orders to slow down as they approached Halsted street and to have their trains under full control at that crossing because of the great number of people who used that crossing, and that that was not a regular stopping place for either train. The fireman of the Alton engine testified that as they were going over Halsted street he saw some object running on his side of the engine, and an instant later some one called out to stop, and he called to the engineer to stop, and the engineer stopped the train, and that after the Alton train was standing still he saw the Central train approaching Halsted street. The engineer of the Alton train testified that as he approached Halsted street he slowed down and went upon Halsted street very slowly, and that after his fireman or some one called out to him to stop he did not run over ten or fifteen feet, and that he did not see the Central engine until after he stopped. Defendant's engineer testified that he slowed down as he approached Halsted street and he saw the Alton train ahead of him, and saw it

stop, and saw quite a number of people collected there about it, and so he stopped his train. That the Central train was not at the time supposed to be in any way involved in the injury to plaintiff seems to appear from the fact that the Central train soon went on, while the Alton train waited quite a time, and its engineer left his engine and went some 300 feet southwest to a street car waiting room on Archer avenue, where the plaintiff had been taken; and if we were authorized to consider the proceedings in Cook county, that conclusion would also be drawn from the fact that plaintiff after suing both roads dismissed as to the Central road and prosecuted the Alton road alone through three jury trials and until met by a final judgment in favor of that road. We have studied this evidence not only in the abstract, but also in the record. We have considered the positions and opportunities of the several witnesses for observing and knowing which train was ahead. We are of opinion that according to the evidence before us in this record plaintiff had been frightened and had run across Halsted street and had fallen and lost her hand by the time that the Central engine entered the east side of Halsted street. It follows that it could not have been the speed of the Central engine which frightened her and caused her to run. It was the Alton engine which was nearest to her. She could not at that time have known what the speed of the Central train was. Fright at the mere approach of a train on its own right of way could not alone give a cause of action, even to a child only seven years old. If the jury had returned a special verdict that the Central train came first, the evidence is so overwhelming that it came last that we could not let such a verdict stand. The strength of the case in favor of defendant is much more than the mere difference in the number of witnesses.

So, too, upon the question of the speed of defendant's train as it approached and entered Halsted .

street.  Three witnesses testified for plaintiff that that
train was traveling at the rate of twenty miles per
hour.  None of those witnesses had ever had occasion
to time the speed of trains or was specially familiar
with the running of trains.  Eight witnesses testified
for defendant as to its speed, and they were mainly
witnesses who had knowledge and experience on that
subject.  The lowest estimate they gave was four miles
and the highest ten miles per hour.  The average of
their estimate was less than seven miles per hour.
The train was stopped in a very short time and dis-
tance by the ordinary appliances, without the use of
the reverse lever or sand.  Under some circumstances,
going upon a crowded and much used thoroughfare at
even that speed might be negligence, but as defend-
ant's engine did not hit plaintiff or cut off her hand,
and as the great preponderance of the proof is that it
did not reach the east side of Halsted street until her
hand had been cut off, twelve feet west of the west side
of Halsted street, we are satisfied plaintiff has no
cause of action because of the speed of the train.
There was a sharp conflict in the proof as to whether
the Central train stood across Halsted street when it
had come to a stop or whether it had passed beyond
the west side of that street before it stopped, the wit-
nesses on each side differing on that subject.  But we
do not regard that question as of special importance.
There was a conflict as to whether the flagmen were on
the crossing.  It was the duty of each to be on the
crossing displaying to the train of his road a signal
by the use of a lighted lantern, and the clear prepon-
derance of the proof is that they were there.  The proof
of plaintiff on that subject is chiefly negative—that
the witnesses did not see the flagmen before the acci-
dent—which is not unreasonable, as they were not
looking for them.  Certain witnesses for plaintiff testi-
fied that they did not hear a bell rung.  We are satis-
fied from the proof that the Alton engine had an au-

tomatic bell which began ringing at its Canal street depot and had been rung continuously till it stopped at Halsted street; and that the Central engine bell was ringing.

It is strongly urged by plaintiff that there is a conflict in the evidence and that there is some evidence tending to support her claims, and as the jury has weighed the evidence and decided in favor of plaintiff, we are not at liberty to interfere with the verdict. On the contrary, since the organization of the Appellate Courts the Supreme Court has been deprived of its power to review the conclusions of the jury upon questions of fact in common law actions, and that duty has been placed upon the Appellate Courts; and it has been often decided that as the law now is in this state it is our duty to reverse the verdicts of juries and the judgments of trial courts thereon whenever upon a consideration of the testimony we find such verdicts are clearly against the weight of the evidence; and that the discharge of that duty by us is essential to the preservation of the rights of citizens, as held by us in Singer Mfg. Co. v. Weil, 115 Ill. App. 384, and other cases, and as held by the Supreme Court in C. & A. R. R. Co. v. Heinrich, 157 Ill. 388; C. & E. I. R. R. Co. v. Meech, 163 Ill. 305; Chicago City Railway Co. v. Mead, 206 Ill. 174; and I. C. R. R. Co. v. Smith, 208 Ill. 608. We are also clearly of opinion we ought not to remand the cause for another trial.

Plaintiff has assigned cross-error upon the instruction given by the court to find defendant not guilty under the third count. That count set up certain ordinances of the city of Chicago and alleged that they made it the duty of defendant not to move this train over Halsted street at a greater rate of speed than ten miles per hour, and that defendant negligently drove said train over said street at a speed of eleven miles

per hour, and by reason thereof she became frightened and confused and placed in great peril, and while trying to escape therefrom and lessen the danger her arm was run over and cut off by the Alton Company. As we are of opinion that the Central train was not there when she became frightened, and that its speed did not frighten her, we think it unnecessary to consider whether the court should have submitted this count to the jury.

For the reasons stated the judgment of the court below is reversed.

*Reversed.*

Finding of fact, to be incorporated in the judgment of the court:

We find from the evidence that defendant was not guilty of the negligence charged in the declaration.